UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| ESTATE OF JEREMY ISADORE LEVIN, ESTATE OF LUCILLE HARE LEVIN, AND SUZELLE M. SMITH, Executrix of the Estate of Lucille Hare Levin and Successor in Interest to Jeremy Levin and Dr. Lucille Levin, | 4:21-CV-04024-KES |
| Plaintiffs, | ORDER DEFERRING CONSIDERATION OF MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| WELLS FARGO BANK, N.A., | |
| Defendant. | |
| UNITED STATES OF AMERICA, | |
| Intervenor. | |

Plaintiffs, Estate of Jeremy Isadore Levin, Estate of Lucille Hare Levin, and Suzelle M. Smith, Executrix, Daughter, and Successor in Interest to Jeremy Levin and Dr. Lucille Levin and their Estates ("Levins"), move for summary judgment on their turnover claims of the Iranian Blocked Assets[1] set

---

[1] The Iranian Blocked Assets consist of 16 separate electronic funds transfers (EFTs) and are identified by their reference numbers as follows: 20200513-00127347, 20230406-00094246, WACNY1317621219, WACNY2211221903, WACNY2215123568, WACNY2231922144, WACNY2231922166, WACNY2232022550, WACNY2232022551, WACNY2232121960, WACNY2232121972, WACNY2232222320, WACNY2304121222, WACNY2304421780, WACNY2304722119, and WACNY2306521927. Docket 51; *see also* Docket 45 ¶ 8.

forth in their supplemental complaint against defendant, Wells Fargo Bank, N.A. Docket 51; Docket 52. Intervenor, the United States of America, has not opposed the Levins' motion. In its response to the Levins' motion for summary judgment, Wells Fargo stated that it "takes no position as to whether [the Levins] have satisfied their burden to demonstrate that they have fulfilled the requirements of TRIA." Docket 62 at 2. But Wells Fargo asserts that because it "believes that other parties may be better suited to evaluate and potentially challenge [the Levins'] arguments," it "believes this [c]ourt should consider whether [the Levins] need to provide notice to those parties whose property is subject to execution and turnover." *Id.* at 2-3. Because the court finds that the Levins should provide notice to the Iranian Front Companies,[2] the court will defer ruling on the Levins' motion for summary judgment.

## BACKGROUND

This case arises from the 1984 kidnapping and torture of CNN Bureau Chief, Jeremy Levin, in Beirut, Lebanon, by Hezbollah terrorists. Docket 53 ¶ 9; *see also Levin v. Bank of N.Y.*, 2011 WL 812032, at *1 (S.D.N.Y. Mar. 4, 2011). On February 6, 2008, following a trial, the United States District Court for the District of Columbia entered judgment in favor of the Levins, and against the Islamic Republic of Iran, the Iranian Ministry of Information and

---

[2] The court will use the Levins' abbreviations to refer to the entities alleged to be agencies and/or instrumentalities of Iran. Thus, the Iranian Front Companies refer to (1) KAKA Global Trading Co. Limited, (2) Oriental Apple Company PTE Ltd., (3) Chery [Cherry] Star Co. Ltd, (4) Salita Trade Limited, (5) Dragon Trading Limited, (6) Noble Miracle International Limited, (7) Evergrande International Ltd, (8) Petro Royal FZE, (9) Yi Li, and (10) Torgan Co. Limited. *See* Docket 52 at 18.

Security, and the Iranian Islamic Revolutionary Guard Corps (the Iranian Judgment Debtors). Docket 53 ¶¶ 5-6; *See Levin v. The Islamic Republic of Iran,* 529 F. Supp. 2d 1, 21 (D.D.C. 2007). The Levins were awarded compensatory damages in the amount of $28,807,719 plus interest. Docket 53 ¶ 5. Plaintiffs gave notice to the Iranian Judgment Debtors of the entry of judgment on October 14, 2008. *Id.* ¶ 7. The Levins have partially collected on the judgment, but as of October 31, 2025, the total uncollected amount is $16,072,836.45. *Id.* ¶ 10. This judgment was renewed on January 24, 2020, for another 12 years and such judgment was registered in the United States District Court for the District of South Dakota. *Id.* ¶ 8.

On February 12, 2021, the Levins filed a complaint seeking turnover of Nautic blocked funds[3] under the Terrorism Risk Insurance Act (TRIA) and SDCL § 21-18-1. Docket 1 ¶¶ 16-24. On April 4, 2025, Wells Fargo produced a spreadsheet of blocked accounts, which disclosed the existence of 16 blocked EFTs (the Iranian Blocked Assets). Docket 53 ¶ 12. The 16 blocked EFTs were from the following originators: (1) KAKA Global Trading Co. Limited, (2) Oriental Apple Company PTE Ltd., (3) Chery [Cherry] Star Co. Ltd, (4) Salita Trade Limited, (5) Dragon Trading Limited, (6) Noble Miracle International Limited, (7) Evergrande International Ltd, (8) Petro Royal FZE, (9) Yi Li, and (10) Torgan Co. Limited (Iranian Front Companies). *Id.*; Docket 34 at 10-11; *see also* Docket

---

[3] The Nautic blocked funds are not at issue in the Levins' current motion for summary judgment, *see* Docket 52 at 9, as the case is stayed in relation to these funds, *see* Docket 16; Docket 28; Docket 31.

3

34-1. The total amount in the Iranian Blocked Assets, as of April 4, 2025, is $11,588,189.52. Docket 53 ¶ 13; *see also* Docket 48 ¶ 5. The Levins then moved the court for a writ of execution on the Iranian Blocked Assets. Docket 53 ¶ 12, 16; *see also* Docket 36. On August 15, 2025, the court issued a writ of execution on the Iranian Blocked Assets. Docket 53 ¶¶ 12, 16; *see also* Docket 38 (order granting writ of execution); Docket 39 (writ of execution). The Levins sent a copy of the court order issuing the writ and the writ of execution to counsel for Wells Fargo and counsel for the United States. Docket 53 ¶ 17; *see also* Docket 48 ¶ 3.

On September 5, 2025, the Levins filed a motion for leave to file a supplemental complaint, seeking to add the Iranian Blocked Assets. *See* Docket 40. The court granted the motion. Docket 46. In its supplemental complaint, the Levins allege that the Iranian Front Companies are all agencies and/or instrumentalities of Iran. Docket 45 ¶ 7. Additionally, the Levins allege that Wells Fargo froze the Iranian Blocked Assets pursuant to the International Emergency Economic Powers Act (IEEPA). *Id.* ¶ 9. As such, the Levins allege that under TRIA and SDCL § 21-18-1, they are entitled to a court order requiring Wells Fargo to turnover the Iranian Blocked Assets to them to partially satisfy their judgment against the Iranian Judgment Debtors. *Id.* ¶¶ 11-13.

## DISCUSSION

The Levins argue that because they have satisfied the four elements necessary to execute under § 201 of TRIA, summary judgment should be

4

entered in their favor. Docket 51; *see also* Docket 52 at 8. While Wells Fargo

does not raise a substantive or factual challenge to the Levins' claim, Docket 62

at 2, Wells Fargo suggests that this court should consider whether notice

should be provided to the Iranian Frontal Companies prior to execution of the

writ, *id.* at 3. Wells Fargo argues that these entities are "better suited to

evaluate and potentially challenge [the Levins'] arguments," and could address

such issues as whether an originator of an EFT has a traceable property

interest in the funds under the TRIA. *Id.* at 3-4. In reply, the Levins argue that

notice need not be served on the Iranian Frontal Companies because neither

the TRIA nor South Dakota law requires that notice be given to "unspecified

third parties." Docket 64 at 4.

Section 201 of the TRIA authorizes terrorism-related judgment holders to

execute against blocked assets[4] of terrorist parties or their agencies or

instrumentalities. Specifically, § 201 provides:

> Notwithstanding any other provision of law, . . . in every case in
> which a person has obtained a judgment against a terrorist party on
> a claim based upon an act of terrorism, or for which a terrorist party
> is not immune under section 1605(a)(7) . . . the blocked assets of
> that terrorist party (including the blocked assets of any agency or
> instrumentality of that terrorist party) shall be subject to execution
> or attachment in aid of execution in order to satisfy such judgment

---

[4] Under the TRIA, "a 'blocked asset' is any asset seized by the Executive Branch
pursuant to either the Trading With the Enemy Act (TWEA) . . . or the
International Emergency Economic Powers Act (IEEPA)." *Bank Markazi v.
Peterson*, 578 U.S. 212, 217 (2016); *see also* TRIA § 201(d)(2). Both TWEA and
IEEPA authorize the OFAC to block assets by designating the owner of those
assets. *Stansell v. Revolutionary Armed Forces of Colom. (Stansell II)*, 771 F.3d
713, 723 (11th Cir. 2014); *see also* 31 C.F.R. §§ 594.201, 594.301, 597.201,
597.303.

to the extent of any compensatory damages for which such terrorist party has been adjudged liable.

TRIA § 201 (codified as a note to 28 U.S.C. § 1610); *see also* Terrorism Risk Insurance Act of 2002, Pub. L. No. 107-297, § 201, 116 Stat. 2322. A party must meet four elements to execute under TRIA § 201. *Stansell v. Revolutionary Armed Forces of Colom. (Stansell II)*, 771 F.3d 713, 723 (11th Cir. 2014).

> The party must first establish that she has obtained a judgment against a terrorist party that is either for a claim based on an act of terrorism or for a claim for which a terrorist party is not immune. The party must then show that the assets are blocked as that term is defined in TRIA. Finally, the total amount of the execution cannot exceed the amount of compensatory damages. If the party wishes to execute against the assets of a terrorist party's agency or instrumentality, the party must further establish that the purported agency or instrumentality is actually an agency or instrumentality.

*Id.* (citations omitted).

While § 201 of the TRIA does not specifically require judgment creditors to provide notice prior to execution, *see* TRIA § 201(a), in *Stansell II,* the Eleventh Circuit held that alleged agencies or instrumentalities of a terrorist party were constitutionally entitled to notice and an opportunity to be heard before execution of a writ, 771 F.3d at 725-27, 729. The Eleventh Circuit noted that while "notice upon commencement of a suit is adequate to give a judgment debtor advance warning of later proceedings undertaken to satisfy a judgment," such notice is insufficient for a third party, "who cannot be expected to be on notice of the judgment." *Id.* at 726-27 (internal quotation marks omitted). The Eleventh Circuit also rejected arguments that the entities are on constructive notice because "they share a legal identity with the judgment debtor,"

6

reasoning that without providing notice, the entity "never has an opportunity to dispute its classification as an agency or instrumentality." *Id.* at 727.

Instead, the Eleventh Circuit reasoned that these entities are entitled to notice of execution or garnishment proceedings because the "agency or instrumentality determination carries drastic results . . . [that] undeniably implicate[] due process concerns." *Id.* at 726. Thus, the Eleventh Circuit concluded that "parties whose assets are under threat of execution pursuant to TRIA § 201 are entitled to notice and an opportunity to be heard in order to rebut the allegations and preserve their possessory interest in blocked assets." *Id.* Further, while the Eleventh Circuit held that the Fifth Amendment's Due Process Clause required that alleged agencies or instrumentalities of a terrorist party be given notice and an opportunity to be heard prior to execution of a writ against its assets, such notice was not constitutionally required before a writ of execution is issued. *Id.* at 729.

The Levins argue that *Stansell II* is distinguishable because there the Eleventh Circuit dealt with real property under Florida law, which separately imposed "specific requirements for notice and an opportunity to be heard." Docket 64 at 5 (quoting *Stansell II*, 771 F.3d at 725). The Levins argue that because South Dakota law does not impose a notice requirement under its statutory framework for garnishment, they do not need to provide notice to the Iranian Frontal Companies. *Id.* Instead, the Levins argue that South Dakota employs "a different procedure which places no such notice burden on Plaintiff (and this is consistent with the language and purpose of TRIA)". *Id.* at 6.

While the Levins correctly note the different requirements under South Dakota and Florida law, they fail to address *Stanwell II*'s holding that the Constitution's Due Process Clause requires that notice and an opportunity to be heard be given to entities alleged to be agencies or instrumentalities of a terrorist organization. *See Stanwell II*, 771 F.3d at 729; *see also Caballero v. Fuerzas Armadas Revolucionarias de Colom.*, 2021 WL 10429635, at *2 (S.D. Fla. Mar. 25, 2021) ("Under *Stansell*, regardless of Florida garnishment law, due process requires that third parties be on actual notice of the proceedings against them."). As such, the court finds the Levins' attempts to distinguish *Stansell II* on the grounds that it applied Florida law unavailing.

The Levins also argue that the entities alleged to be agencies or instrumentalities of Iran have received sufficient notice because as "the originator of the money," each entity is aware that the EFTs were blocked. Docket 64 at 8-9. Additionally, the Levins argue that because each of the entities failed to contest OFAC's designation of each as an agency or instrumentality of Iran, there is no need to notify each entity regarding the current proceedings. *Id.* at 9. The Eleventh Circuit rejected such arguments in *Stansell II*, reasoning that simply receiving notice of an OFAC designation is inadequate to satisfy the requirements of due process because it only notifies an alleged agency or instrumentality that its assets have been blocked and of the potential for TRIA execution. *Stanwell II*, 771 F.3d at 740-41 (reasoning that such "notice of the potential for proceedings without notice of their timing, location, adverse parties, nature, etc., is not sufficient to satisfy due process").

For similar reasons, the court finds that the mere fact that the EFTs were blocked or that the Iranian Frontal Companies were given an OFAC designation is insufficient to notify each of the Iranian Frontal Companies of the current lawsuit seeking execution under the TRIA.

Instead, the court adopts the Eleventh Circuit's reasoning in *Stansell II* and finds that due process requires that the ten entities alleged to be agencies or instrumentalities of Iran must be given notice and an opportunity to contest this determination. Other district courts have adopted *Stansell II*'s reasoning under similar circumstances. *See, e.g., Caballero v. Fuerzas Armadas Revolucionarias de Colom.*, 2022 WL 2439386, at *3 (W.D.N.Y. June 7, 2022) (reasoning that alleged agencies or instrumentalities are entitled to notice and an opportunity to rebut allegations that they are an agency or instrumentality of a terrorist organization because they "have a possessory interest in their property that they are entitled to defend"); *Caballero v. Fuerzas Armadas Revolucionarias de Colom.*, 2021 WL 307558, at *1 n.2 (W.D.N.Y. Jan. 29, 2021) (reasoning that third party was entitled to notice and opportunity to be heard to rebut allegations that it is an agency or instrumentality of a terrorist organization); *Caballero*, 2021 WL 10429635, at *2; *see also Gates v. Syrian Arab Rep.*, 2013 WL 1337223, at *10 (N.D. Ill. Mar. 23, 2013) (noting that "[t]he Court is far from alone in having these concerns about providing notice to the parties involved in the EFTs"). *But see Estate of Heiser v. Islamic Rep. of Iran*, 807 F. Supp. 2d 9, 23 (D.D.C. 2011) (finding that "Congress did not inten[d] to require service of garnishment writs on agencies or instrumentalities of foreign

9

states responsible for acts of state-sponsored terrorism"). Thus, because due process requires that notice and an opportunity to be heard be provided before the writ is executed, and because such notice has not been provided to the ten entities listed above, the court finds that plaintiffs must notify each of the ten entities to allow them an opportunity to contest the agency or instrumentality determination.

## CONCLUSION

Based on the foregoing, it is

ORDERED that Plaintiffs shall provide notice to the following entities: (1) KAKA Global Trading Co. Limited, (2) Oriental Apple Company PTE Ltd., (3) Chery [Cherry] Star Co. Ltd, (4) Salita Trade Limited, (5) Dragon Trading Limited, (6) Noble Miracle International Limited, (7) Evergrande International Ltd, (8) Petro Royal FZE, (9) Yi Li, and (10) Torgan Co. Limited. Such notice will include a copy of the court order issuing the writ of execution at Docket 38 and the writ of execution issued at Docket 39. The notice will also specify the specific EFT at issue for each individual entity and indicate that the entities will have 30 days following service to file objections to the order granting the writ of execution.

DATED May 11, 2026.

BY THE COURT:

/s/ Karen E. Schreier
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE

10